UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDNA WILDER, as Personal
Representative of the ESTATE OF
JANE HEWETT,

        Plaintiff,

v.                                   CASE NO. 3:09-cv-10109-J-32JBT

R.J. REYNOLDS TOBACCO
COMPANY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant Philip Morris USA Inc's ("PM")

Motion for Attorneys' Fees (Doc. 235), Defendant R.J. Reynolds Tobacco

Company's ("Reynolds") Motion for Attorneys' Fees (Doc. 237), (collectively,

"Motions"), Plaintiff's Opposition to Defendants' Motions for Attorneys' Fees (Doc.

239) ("Opposition"), Defendants' Supplemental Memorandum in Support of Their

Motions for Attorneys' Fees and Costs (Doc. 244) ("Supplemental Memorandum"),

and Plaintiffs' Opposition to Defendants' Supplemental Memorandum for Attorneys'

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

Fees and Costs (Doc. 245).[2]   For the reasons stated herein, it is respectfully

**RECOMMENDED** that the Motions be **DENIED**.[3]

The sole issue presented is whether the Court should, "in its discretion,"

determine that Defendants' proposals for settlement were "not made in good faith"

within the meaning of Section 768.79(7)(a), Florida Statutes.  After a review of the

parties' submissions and the record in this case, the undersigned recommends that

the Court should exercise its discretion to deny the Motions because Plaintiff has

met her burden of demonstrating that Defendants' offers were not made in good

faith.

## I.   Background

Plaintiff Edna Wilder, as Personal Representative of the Estate of Jane Hewett

("Plaintiff"), brought this *Engle* progeny wrongful death lawsuit  against Defendants

arising from the death of her mother, Ms. Hewett ("decedent").  The lawsuit was

brought on behalf of the decedent's estate and her two surviving children.   Plaintiff

claimed that as a result of the decedent's addiction to cigarettes manufactured by

Defendants, the decedent developed lung cancer and died. (*See* Doc. 101 at 2.)

The case was initially set for the jury trial term beginning September 1, 2012.

---

[2] The supplemental memoranda were filed pursuant to the Court's Order inviting them.  (Doc. 243.)

[3] In a previous Order, the undersigned denied the Motions without prejudice for procedural purposes only.  (Doc. 241.)  The undersigned treats Defendants' filing of the Supplemental Memorandum as a renewal of the Motions and allows same.

(Doc. 77 at 2.)  Approximately forty-five days before the beginning of the trial term, on July 18, 2012, Defendants served their proposals for settlement.  (Docs. 235-1, 237-1.)  The timing of these proposals appears to coincide with the deadline for making such proposals contained in Rule 1.442(b), Florida Rules of Civil Procedure.[4]

Reynolds' proposal was in the amount of $9,000.00. (Doc. 237-1 at ¶ 4.)  It does not indicate the basis for the proposal, although such a statement is not required.  *See* Fla. Stat. § 768.79; Fla. R. Civ. P. 1.442.  PM's proposal was in the amount of $5,000.00.  (Doc. 235-1 at ¶ 2.)  It contains a section entitled "Good Faith Basis for Proposal," in which PM primarily emphasized its position that Plaintiff's reliance on the *Engle* findings was "misplaced and untenable." (*Id.* at ¶ 3.)  PM also maintained that Plaintiff could not prove "the proximate causation element of her claims."  (*Id.*)

The case ultimately proceeded to trial beginning on January 22, 2013, and ending with a defense verdict on February 5, 2013.  (Docs. 171, 224.)  The jury found that the decedent was addicted to cigarettes containing nicotine, and that such addiction was a legal cause of her lung cancer and death.  (Doc. 229 at ¶¶ 1–2.)  However, the jury also found that neither negligence nor strict product liability on the part of either Defendant was a legal cause of the decedent's death,[5] and that the

---

[4] It may be an open issue whether this deadline applies in federal court.  However, a prudent offeror would seek to comply with this deadline to avoid the issue.

[5] As a result of the intervening Florida Supreme Court decision in *Philip Morris USA,*
(continued...)

decedent did not rely on any fraudulent concealment, or related conspiracy, by either Defendant.  (*Id*. at ¶¶ 3–5.)   Based on the jury's verdict, judgment was entered in favor of Defendants.  (Doc. 233.)

After awaiting a decision from the Eleventh Circuit in *Pickett v. R.J. Reynolds Tobacco Co.*, 948 F. Supp. 2d 1314 (M.D. Fla. 2013), *aff'd,* 564 F. App'x 981 (11th Cir. May 6, 2014), this Court ordered supplemental memoranda to address the effect of *Pickett*, if any, on the Motions.  (Doc. 243.)  These memoranda have been filed, and the matter is now ripe for decision.

## II.    Standard

A thorough discussion of the law pertaining to the "good faith" aspect of Section 768.79, Florida Statutes, is contained collectively in the Eleventh Circuit and district court decisions in *Pickett,* as well as the underlying Report and Recommendation.  This full discussion will not be repeated here.  However, several principles are worth noting.  First, the Eleventh Circuit reviewed the district court's decision denying attorney's fees under an abuse of discretion standard.  *See Pickett*

---

(...continued)
*Inc. v. Douglas*, 110 So. 3d 419 (Fla. 2013), at a subsequent trial, this Court combined the negligence causation question with the strict liability causation question on the verdict form into a single question and changed the wording of the question.  (*Compare Wilder* verdict form (two questions pertaining to negligence and strict liability): "Please state, as to each Defendant, whether negligence on the part of Defendant was a legal cause of Jane Hewett's death;" similar question regarding strict product liability (Doc. 229 at ¶¶ 2–3) *with Giddens* verdict form (one question pertaining to both negligence and strict liability): "Please state, as to each Defendant, whether smoking cigarettes manufactured by Defendant was a legal cause of [decedent's] death.")  *Giddens v. R.J. Reynolds Tobacco Co.*, Case No. 3:09-cv-13590-J-34JBT (Doc. 226 at ¶ 3).

*v. R. J. Reynolds Tobacco Co.,* 564 F. App'x 981, 982 (11th Cir. May 6, 2014) (citing

*Sahyers v. Prugh, Holliday and Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir.

2009)).   Second, the Eleventh Circuit noted that the district court arrived at its

decision after considering "the low amount of the offer [$10,000], the timing of the

offer [the eve of trial], the pre-determined conduct issues tipping the scales, the high

potential for punitive damages, the verdicts decided around the same time that the

offer was made, and the protracted, rancorous history of this litigation." *Pickett*, 564

F. App'x at 982.   The Eleventh Circuit found that the district court did not abuse its

discretion by considering these factors to determine that the offer in *Pickett* was not

made "with the subjective good faith intent to settle the claim." *Id.*

In reviewing Florida case law, the district court in *Pickett* noted the following

factors in determining the offeror's subjective good faith: "the amount of the offer, the

offeror's potential exposure, the complexity and closeness of the case, and the

offeror's justification for the offer."   948 F. Supp. 2d at 1317.   The district court also

noted:

> As to the amount of the offer, courts should "view with
> considerable skepticism nominal offers which bear no
> relationship to damages and which are not founded upon
> a reasonable and realistic assessment of liability."
> However, "nominal offers of judgment are not alone
> determinative of bad faith." "Therefore, even viewing such
> offers with 'considerable skepticism,' proof of bad faith
> requires a showing beyond the mere amount of the offer
> . . . . [It] involves an inquiry into the circumstances shown
> by the entire record of the case."

*Id*. (citations omitted).

### III. Analysis

The undersigned recommends that the same factors that led the district court to deny fees in *Pickett* weigh in favor of denying fees here. As in *Pickett*, Defendants' offers are low, considered both individually and collectively ($9,000.00 and $5,000.00). The offers were served as close to the beginning of the trial term as the Florida rules allow. The same predetermined *Engle* findings apply in this case as in *Pickett*. The potential for punitive damages was present in this case. As discussed further below, although several federal jury verdicts favorable to *Engle* defendants were rendered between the time of the *Pickett* offer and the offers at bar, the overall history of both state and federal verdicts at that time showed that although results were variable, the realistic potential for extremely high verdicts remained. Finally, the "protracted, rancorous history of this litigation" applies equally to this case as it did to *Pickett*.

The undersigned also recommends that the Court "view with considerable skepticism" the subject proposals as they appear to "bear no reasonable relationship to damages" and do not appear to be "founded upon a reasonable and realistic assessment of liability." *Eaglemen v. Eaglemen*, 673 So. 2d 946, 948 (Fla. Dist. Ct. App. 1996). However, the burden of showing lack of good faith is on the offeree and the circumstances of the case ultimately control. *See Pickett*, 948 F. Supp. 2d at 1317 (citing *Levine v. Harris,* 791 So. 2d 1175, 1178 (Fla. Dist. Ct. App. 2001)). As

noted above, these circumstances weigh in favor of finding that Defendants did not make these proposals in a good faith effort to settle the case, but rather only to create a potential claim for attorneys' fees.

The case-specific factors relied on by Defendants in their Motions to justify their low offers are not persuasive. (*See* Docs. 235 at 5–6, 237 at 8–9.) These factors include that the decedent did not begin smoking until her early twenties, that she eventually quit smoking, that there was no proof she relied on cigarette advertisements, that her family members encouraged her to quit smoking, and that Plaintiff could not quantify the amount or duration of the decedent's alleged use of PM products. (*Id*.) Viewed individually or collectively, these factors reflect only potential weaknesses in Plaintiff's case, arguments, or fact issues present in many *Engle* progeny cases. They do not negate the realistic potential for a high verdict, for which any reasonable assessment of liability would have to account.

Moreover, Defendants' arguments are undermined by the consistently low offers they appear to have made in most, if not all, *Engle* progeny cases around this time. (*See* Doc. 239-10.) These offers stand in sharp contrast to the way these cases have been defended. For example, in this case, Defendants asked for, and received, permission to take more than ten depositions. (Docs. 45, 51.) Typically, Defendants facing minimal exposure do not seek discovery beyond that which is

normally permitted by the rules.[6]

In their Supplemental Memorandum, Defendants argue that *Pickett* is distinguishable for four reasons. (Doc. 244.)  First, they point to the five favorable federal verdicts in *Engle* progeny cases prior to the time they served their proposals for settlement in this case. (*Id.* at 1–2.)  At that time, there had been three defense verdicts and two small plaintiff verdicts in federal court. (*Id.*)  However, Defendants ignore the considerable state court history of *Engle* progeny litigation, which was reviewed in *Pickett*.  Under any reasonable view, this history showed that plaintiffs won more cases than they lost, and when they won, it was not at all unusual for compensatory and/or punitive damages to be well in the millions.  *Pickett*, 948 F. Supp. 2d at 1324.  (Doc. 239-6.)

In fact, it is obvious that Defendants themselves recognize this reality.  In its Petition for Writ of Certiorari to the U.S. Supreme Court in *R.J. Reynolds Tobacco Co. v. Walker*, Reynolds argued that the "extreme application of preclusion principles will infect thousands of cases involving potentially billions of dollars with constitutional error."   Petition for Writ of Certiorari, *R.J. Reynolds Tobacco Co. v. Walker*, Case No. 13-1193, 2014 WL 1309329, at *35.  Reynolds went on to argue:

> The unconstitutional deprivations of defendants' property
> bound to result from this truncated procedure will be
> astronomical.  The awards here may be modest, but they

---

[6] In her Opposition, Plaintiff attaches charts of settlement offers from Defendants (Doc. 239-10), and the history of state and federal verdicts at the time the subject offers were made (Doc. 239-26). The contrast between the offers and the verdicts is striking.

> are hardly representative - collectively, just a tiny fraction
> of progeny cases already have produced more than $450
> million in liability, including both massive punitive awards
> and "mega-noneconomic" compensatory awards.

*Id.* It is difficult to square the above language with Defendants' history of settlement proposals or certain arguments made herein.

Although the federal verdicts prior to the time of the subject offers are certainly relevant, they were small in number, and no realistic assessment of damages would ignore the state court verdicts and rely solely on the federal ones.  The undersigned recommends that this is not a persuasive basis to distinguish *Pickett*.

Second, as in *Pickett*, Defendants assert that many *Engle* progeny plaintiffs have accepted offers in the range offered by Defendants here.  (Doc. 244 at 2–3.) However, the following observation made in *Pickett* is applicable here: "The undersigned agrees that a history of accepted offers in similar cases might suggest that a similar offer has a good faith basis.  However, Defendant provides very little information about these other cases to suggest they are similar."  948 F. Supp. 2d at 1326.  Again, Defendants have offered no information, factually or procedurally, about these other cases, but have argued that they are not required to do so because it is Plaintiff's burden to show lack of good faith.  (Doc. 244 at 2–3.)

Even though it is Plaintiff's burden to show lack of good faith, the Court must still consider Defendants' proffered justifications for their offers.  *Pickett*, 948 F. Supp. 2d at 1317.  In doing so, the Court is not required to accept at face value

Defendants' "self-serving, post hoc rationalizations" of good faith. *Id*. at 1318. It is the Court's responsibility to dig beneath the surface and examine Defendants' asserted reasons. Defendants' contention that the Court is digging too far merely undermines their proffered justifications. Thus, based on the record in this case, the undersigned recommends that this argument is no more persuasive here than it was in *Pickett.*

The third reason given, that the jury verdict itself is strong evidence of good faith (Doc. 244 at 3–4), is the same 20/20 hindsight argument that was rejected in *Pickett*: "As to the take nothing-verdict, if the Court accepted Defendant's proposition that a verdict in one's favor proves a low settlement offer reasonable, the Court would be forced to read the good-faith requirement completely out of the statute." *Pickett*, 948 F. Supp. 2d at 1318. Moreover, in the case at bar the jury did find that the decedent was addicted to cigarettes containing nicotine and that such addiction caused her lung cancer and death. (Doc. 229 at ¶¶ 1, 2.) However, the jury found no causation as a result of Defendants' predetermined negligence and strict liability. (*Id*. at ¶¶ 3, 4.) Although the *Pickett* verdict was unusual in that liability and causation were found but no damages were awarded, the undersigned recommends that the verdict in this case is not a persuasive reason to find good faith.

Finally, Defendants argue that this Court should adopt the analysis of Judge Garbis in *Chamberlain v. R.J. Reynolds Tobacco Co.*, Case No. 3:09-cv-10809-

WGY-JBT, 2014 WL 2215760 (M.D. Fla. May 28, 2014).[7]  However, the undersigned

recommends that this case is distinguishable from *Chamberlain* on several grounds.

First, the total of the two offers made in *Chamberlain* was $40,000.00, not

$14,000.00.  *Id.* at *1.  Second, several months before the defendants' offers, the

plaintiff had made a collective proposal to both defendants to settle for a total of

$60,000.00.  *Id.*  This offer evidenced the plaintiff's willingness to settle in the mid-

five figure range.  Moreover, the plaintiff's proposal to Reynolds, for $30,000.00, was

the same amount that Reynolds offered several months later.  *Id*.  Under those

circumstances, Judge Garbis concluded:

> The "bottom-line" is that the Court does not find Reynolds'
> offer to settle for $30,000.00 to be made in bad faith.
> Indeed, the fact that Plaintiffs had, themselves, previously
> offered to settle their claims against Reynolds for the
> same amount may well, in and of itself, be conclusive.
> The Lorillard offer of $10,000,00, i.e. one third of the
> Reynolds offer, was reasonable, particularly in light of the
> smaller, if not de minimus, potential recovery from
> Lorillard.

*Id*. at *4.

Ultimately, as recognized by the Eleventh Circuit and as stated in the statute

itself, each judge has the discretion to consider the facts and circumstances of the

particular case before it, and make a determination regarding good faith.  *See*

*Pickett*, 564 F. App'x at 982; Fla. Stat. § 768.79.  For that reason, there is no

---

[7] In *Chamberlain*, the plaintiff who went to trial was a living smoker over 80 years of age.  *Chamberlain,* Case No. 3:09-cv-10809-WGY-JBT (Doc. 279 at 1).

inconsistency between the *Pickett* and *Chamberlain* decisions, and there is also no

inconsistency between this recommendation and *Chamberlain.*

     For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motions

(**Docs. 235, 237**) be **DENIED.**

     **DONE AND ENTERED** at Jacksonville, Florida, this 21st day of January, 2015.


                                                     JOEL B. TOOMEY
                                                    United States Magistrate Judge


Copies to:

The Honorable Paul A. Magnuson
Senior United States District Judge

Counsel of Record